IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2014

## KENNETH RAY JOBE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. 10-CR-29      Russell Lee Moore, Jr., Judge**

**No. W2014-00997-CCA-R3-PC  - Filed February 6, 2015**

The Petitioner, Kenneth Ray Jobe, appeals as of right from the Dyer County Circuit Court's denial of his petition for post-conviction relief.  In this appeal, the Petitioner contends that he received ineffective assistance of counsel based upon trial counsel's failure: (1) to communicate the amount of restitution that was included as a part of his guilty plea; (2) to file a motion to vacate his plea; and (3) to effectively communicate with him.  Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Hal J. Boyd, Tiptonville, Tennessee, for the appellant, Kenneth Ray Jobe.

Herbert H. Slatery, III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2010, the Petitioner was indicted on three counts of theft of property valued at $1,000 or more.  See Tenn. Code Ann. § 39-14-103.  The indictments resulted from the complaints of three separate victims who claimed that the Petitioner, an automobile mechanic, had sold their vehicles for scrap metal.  Each victim had taken a vehicle to the Petitioner to be repaired.  After the victims made multiple, futile attempts to find out whether repairs were being made and when the repairs would be completed, it was discovered that

the Petitioner had sold the vehicles for scrap metal without the owners' permission.

*I. Guilty Plea Submission Hearing*

On August 16, 2010, the Petitioner pled guilty as charged in the indictment. The prosecutor stated that because the Petitioner would be classified as a Range III, career offender, he was facing a sentence of twelve years to be served at sixty percent. However, the prosecutor indicated that as part of the plea agreement, the State was offering a ten-year sentence, suspended to time served, in exchange for the Petitioner's paying restitution to each of the victims. The prosecutor had spoken with the victims and told the court that their main concern was receiving restitution for the loss of their vehicles. Both parties indicated that the Petitioner was entering best interest pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970) . The trial court asked why the Petitioner was entering the best interest plea, and trial counsel explained that the defense's position was that, because the Petitioner was a mechanic who believed that he had a legal right to sell the abandoned vehicles, the case should have been civil, rather than criminal. Thus, the Petitioner was not willing to admit guilt and instead wished to enter best interest pleas.

The State briefly recounted the following facts underlying the charges against the Petitioner. In December 2009, Matilda Dyson, Amber Barger, and Letitia Prince[1] each brought their vehicles to the Petitioner to be repaired. Subsequently, Ms. Barger and Ms. Prince checked on the status of the vehicle repairs at least once per week. However, "[t]hey were given the run around by the [Petitioner]." Ms. Dyson also inquired about her vehicle, and the Petitioner informed her that the vehicle was actually at a different location. The Petitioner then "took [Ms. Dyson's] mother on a wild goose chase across town trying to lose her." It was eventually discovered that the Petitioner had taken each woman's vehicle to be sold for scrap metal.

The trial court accepted this factual basis and engaged the Petitioner in a plea colloquy. The trial court explained the various rights that the Petitioner was entitled to, and the Petitioner stated that he understood his rights. The Petitioner also indicated that he understood that by pleading guilty, he was waiving each of these rights and stated that he felt it was in his best interest to plead guilty. When asked whether trial counsel had answered all his questions regarding the pending charges and guilty plea, the Petitioner responded affirmatively. The Petitioner also indicated that he was completely satisfied with trial counsel's representation.

---

[1]"Letitia" is spelled differently throughout the record. In this opinion, we have adopted the spelling used in the indictment.

The trial court explained that the plea deal subjected the Petitioner to judicial sentencing and told the Petitioner that, as a career offender, without a plea agreement he would receive a mandatory sentence of twelve years at sixty percent. At this point, trial counsel and the prosecutor asked the judge to "waive the forty-five day rule" and instead scheduled the sentencing hearing sixty days out, for October 19, 2010. The trial court instructed the Petitioner to "get that paid" because "[i]f you don't . . . it's a straight twelve year sentence." The Petitioner responded, "I'll get it paid." The specific amount of restitution is not mentioned in the guilty plea hearing transcript nor in the judgment forms or plea agreement documents.

Subsequently, the Petitioner twice failed to appear for his sentencing hearing and was indicted for two felony failure to appear charges. Finally, on January 31, 2012, the trial court held the sentencing hearing and imposed an effective sentence of twelve years at sixty percent for the three theft charges.

## II. Post-Conviction Hearing

The Petitioner filed a direct appeal from his theft convictions on March 1, 2012. However, as part of the plea agreement for his two felony failure to appear charges, the Petitioner agreed to voluntarily dismiss his direct appeal. In exchange, the State dismissed one felony failure to appear and recommended a one-year sentence on the remaining charge to be served consecutively to the twelve-year sentence for his theft convictions. This court entered an order granting the voluntary dismissal of the Petitioner's direct appeal on March 30, 2012. The Petitioner filed a timely pro se petition for post-conviction relief on April 1, 2013, challenging his guilty plea on the theft charges.[2] Counsel was appointed, and several amended post-conviction petitions followed. A hearing was held on January 6, 2014.[3]

At the hearing, trial counsel testified that he had worked at the public defender's office for approximately nine years and that he had handled "thousands of cases." At the

---

[2]Ordinarily, a post-conviction appeal must be filed within one year "of the date of the final action of the highest state appellate court to which an appeal is taken." See Tenn. Code Ann.§ 40-30-102. However, "[i]f papers required or permitted to be filed by these rules are prepared by or on behalf of a pro se petitioner incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correction facility within the time fixed for filing." Tenn. Sup. Ct. R. 28, §2(G). The record reflects that Petitioner's pro se petition was delivered to prison officials on March 26, 2013, and was therefore timely.

[3]In his petition, the Petitioner asserted various grounds for relief and provided multiple theories to support his claim of ineffective assistance of counsel. However, because the Petitioner has narrowed these issues on appeal, we will include only facts from the hearing that are relevant to his current claims.

time he worked on the Petitioner's case, he estimated that he had handled about twenty jury trials involving felony criminal charges, some of which included theft charges. Trial counsel estimated that he and the Petitioner met five times and stated that he was very familiar with the facts of the case. Trial counsel first met the Petitioner while he was still in jail, and his representation continued after being appointed in circuit court. Trial counsel testified that he and the Petitioner had a "cordial" relationship until the Petitioner's failure to appear. After the initial failure to appear, counsel said that the relationship "could be considered somewhat contentious."

Trial counsel remembered talking to the Petitioner about his career offender status and explained to the Petitioner that he was facing twelve years at sixty percent if he went to trial and lost. Trial counsel testified that he and the Petitioner discussed the Petitioner's belief that he had a valid "mechanic's lien" on the cars at the time he sold them for scrap metal. According to trial counsel, if the case went to trial, he intended to rely upon the Petitioner's belief that he had an enforceable lien on the vehicles at the time he sold the cars to negate the requisite mental state needed to support a theft conviction.

Regarding the plea offers and restitution amount, trial counsel testified that he and the Petitioner discussed the fair market value of the vehicles. Trial counsel recalled that there was some disagreement between the valuation given by the Assistant District Attorney General and the value that the Petitioner felt was appropriate, which was $1,000. Trial counsel was of the opinion that "$2,500 would have been [a] pretty good compromise"; however, the Assistant District Attorney General "basically said if [the Petitioner] doesn't want to go to jail he pays my price, that's $4,500 and if he doesn't want to pay that then we can go to trial and he can do twelve years at [sixty percent]." Although trial counsel did try to negotiate for a lower restitution amount, "it was more or less a take it or leave it situation."

Trial counsel agreed that there was no mention of the specific restitution amount in the guilty plea transcript. He testified that it was his "best guess" that the Petitioner thought the restitution amount was lower based on the Petitioner's belief that the valuation of the three cars together totaled $1,000. However, trial counsel denied telling the Petitioner that the State had agreed to restitution in that amount. Trial counsel testified that he told the Petitioner that he did not have to come up with all the money right away and, instead, explained to the Petitioner that if he showed up with a "substantial amount" at the sentencing hearing, the hearing would be continued to give him time to pay the remainder of the restitution.

Trial counsel denied receiving a letter from the Petitioner on August 6, 2010. Trial counsel agreed that his office was "systematic" about bringing any incoming letters to his attention and placing them in the appropriate client's file.

-4-

Trial counsel also did not remember the Petitioner's asking him to file a motion to vacate the plea. Trial counsel did recall talking to the Petitioner at the courthouse after the guilty plea submission hearing. Trial counsel remembered the Petitioner's telling him that he did not think the restitution amount "was supposed to be that much" and testified that he was "confused" as to why the Petitioner would say this. Specifically, trial counsel recalled discussing the fact that the Petitioner was apparently making "good money" at the time and would be able to pay the higher amount of restitution. According to trial counsel, the Petitioner and the Petitioner's mother and girlfriend, who were also present for the conversation, agreed that the Petitioner would be able to repay the $4,500. Trial counsel testified that at that point, he and the Petitioner also discussed the fact that the Petitioner would be given more time to pay back the restitution as long as the Petitioner was able to pay "a good portion" of it by the time of the scheduled sentencing hearing.

The Petitioner failed to appear for his sentencing hearing on October 26, 2010, and was indicted for felony failure to appear. According to trial counsel, the Petitioner was arrested but was allowed to make bond on the failure to appear charge. The Petitioner made one court appearance after that, and his sentencing hearing for the theft charges was reset for August 8, 2011. Trial counsel recalled that, at this point, the State had given him another chance to make restitution payments and had offered another plea deal—ten years suspended to one year—encompassing the theft charges and the new failure to appear charge. Trial counsel testified that the Petitioner said he was planning to pay the restitution, that he was working in Jackson at the time, and that it would not be a problem to come up with the money.

Trial counsel testified that on August 8, 2011, the Petitioner again failed to appear for sentencing, and he was indicted on a second failure to appear charge. Finally, on January 31, 2012, the Petitioner was sentenced to twelve years at sixty percent on the theft charges. He was still facing the two failure to appear charges, but the State offered the Petitioner a one-year sentence for one of the failure to appear charges to be served consecutively to the sentence for the theft convictions. The other failure to appear was dismissed in exchange for the Petitioner voluntarily dismissing his direct appeal for the theft convictions.

The Petitioner testified that he believed he had an "expressed [sic] mechanic's lien" and that he discussed this with trial counsel. According to the Petitioner, he wrote trial counsel a letter dated August 6, 2010, and that letter accurately represented his relationship with trial counsel. In the letter, the Petitioner asserted that trial counsel had missed an appointment, that the Petitioner had tried to "track down" trial counsel, and that he had left fourteen messages for trial counsel. The letter further alleged that trial counsel had only met with the Petitioner for about twenty minutes at the District Attorney General's office; however, at the hearing, the Petitioner admitted that this was not accurate and that he had

actually met with trial counsel "a couple of times."

The Petitioner also testified about a letter he wrote to trial counsel on August 20, 2010. In that letter, the Petitioner claimed that trial counsel told him that he would only have to pay $1,000, which was "just barely over what [the Petitioner] got for all three of the vehicles." Further, the Petitioner's letter alleged that trial counsel did not tell him he would have to pay $4,500 in restitution until after the guilty plea hearing and that upon finding out the restitution amount, the Petitioner wanted to withdraw his plea. According to the Petitioner, trial counsel explained that he could withdraw his plea, and the Petitioner directed trial counsel to do so. The Petitioner testified that, although he told trial counsel to vacate the plea and "wrote him several letters about it," trial counsel did not take further action. At the hearing, the Petitioner maintained that he never agreed to pay $4,500 in restitution and instead insisted that he agreed to pay only $1,000. The Petitioner further testified that he could have paid the $1,000 and that he "had $750 in [his] pocket" when he arrived at court on August 16, 2010.

Next, the Petitioner testified regarding a letter that he sent to trial counsel on September 16, 2010. In that letter, the Petitioner expressed that he did not know what judicial sentencing was and that trial counsel never explained it to him. The Petitioner stated that trial counsel told him that he would be pleading guilty in exchange for four years at thirty percent. The Petitioner also presented a copy of a letter dated September 30, 2010, in which he wrote, "last time I spoke with you you promised you would take care of it." At the hearing, the Petitioner clarified that he was referring to counsel's promise to vacate the plea.

The Petitioner testified that on August 16, 2010, he showed up at the courthouse prepared to take his case to trial and that trial counsel did not discuss a plea agreement with him until "twenty minutes before trial." The Petitioner testified that trial counsel "plainly told [him] wrong to a clear point of law"—the existence of a mechanic's lien—and that, but for this advice, he would not have pled guilty.

On cross-examination, the Petitioner agreed that, with regard to the amount of restitution, the Assistant District Attorney General told him, "You'll pay what I tell you to pay." The Petitioner testified that initially the Assistant District Attorney General informed him that restitution would be $1,000 for each car but that at some point the value of one car was increased to $2,500. However, the Petitioner insisted that he never agreed to these valuations and never agreed to pay a total of $4,500 in restitution. The Petitioner responded affirmatively when asked whether he really expected to only pay $1,000 when he was facing three separate counts of theft over $1,000.

The Petitioner testified that, although he showed up with some money to pay towards

restitution on August 26, 2010, trial counsel advised him not to make a payment yet because he was going to vacate the plea. According to the Petitioner, the reason he did not come to his scheduled court date on October 26, 2010, was because he "was nervous" and "didn't want to go to jail for something [he] didn't do." Additionally, the Petitioner asserted that he could not get in contact with trial counsel. The Petitioner admitted that he never paid any of the restitution and that he twice failed to appear for his court dates.

Later in the hearing, the Petitioner told the post-conviction court that trial counsel admitted he had made mistakes in the Petitioner's case but refused to admit those mistakes to the trial court. According to the Petitioner, trial counsel offered to "type . . . up a template" to assist the Petitioner in filing a post-conviction appeal. The Petitioner further alleged that trial counsel delivered the post-conviction template to a correctional officer, Ricky Greer. Ricky Greer testified at the hearing and was asked whether he remembered trial counsel's meeting with the Petitioner at the jail. He responded that he "really and truly [couldn't] recall that" and, although he could "vaguely" remember trial counsel visiting the Petitioner in jail, he did not remember any conversations between the Petitioner and trial counsel.

Trial counsel was recalled to the stand, and the post-conviction court asked him whether he had admitted making mistakes and whether he provided the Petitioner with a template for his appeal. Trial counsel testified that, in the course of discussing the Petitioner's failure to appear charges, he informed the Petitioner of his right to seek post-conviction relief if he was unhappy about the outcome of his cases. Trial counsel admitted that the relationship between himself and the Petitioner had become contentious at this point. According to trial counsel, he told the Petitioner that he understood that the Petitioner was frustrated with him and felt that he had made mistakes but that the State had made an "incredibly good offer" on the failure to appear charges and that the Petitioner should accept the offer. The court then asked whether trial counsel told the Petitioner that he would file a motion to vacate the plea or withdraw the plea, to which trial counsel responded, "No. Absolutely not."

Regarding the letters the Petitioner purportedly sent to him, trial counsel testified that he had not seen them until after the post-conviction petition was filed. Trial counsel testified that "what struck [him]" when he saw copies of the letters was that, in the course of his practice, he could not remember ever receiving a letter from a client who was not in custody. Trial counsel looked through the Petitioner's case file and did not find any letters. He further testified that it was his practice to "routinely" return client's phone calls and that, although he could not definitively say that he never missed an appointment with the Petitioner, it would be "extremely inaccurate" to say that he "would routinely not return calls." Furthermore, trial counsel recalled meeting with the Petitioner in his office "several times."

The post-conviction court made an oral ruling from the bench denying the Petitioner post-conviction relief.[4] The court found that the Petitioner agreed to the plea agreement and that, although the amount of restitution was not contained in the transcript from the guilty plea submission hearing, the Petitioner knew that he would have to pay restitution in exchange for a fully suspended ten-year sentence. The court noted that it had "a great question in [its] mind about the letters that [the Petitioner had] introduced." The court concluded that the Petitioner had not proven that trial counsel's performance was deficient in any way or that the Petitioner had suffered any prejudice from trial counsel's performance. This appeal followed.

## ANALYSIS

On appeal, the Petitioner contends that he was denied the effective assistance of counsel because trial counsel failed to communicate the terms of his plea, and more specifically, the amount of restitution; that trial counsel failed to file a motion to vacate the Petitioner's plea; and that trial counsel failed to effectively communicate with the Petitioner. The State responds that the Petitioner is not entitled to relief because he has failed to show by clear and convincing evidence that he was not fully apprised of the terms of his plea agreement, that trial counsel's failure to file a motion to vacate the plea amounted to ineffective assistance of counsel, or that trial counsel did not effectively communicate with the Petitioner. We agree with the State.

In a post-conviction proceeding, the burden is on the Petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72

---

[4]The post-conviction court entered a written order denying post-conviction relief in more general terms on January 7, 2014.

(1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner first contends that trial counsel failed to communicate the amount of restitution included in his guilty plea. In support of his claim, the Petitioner would have us believe that he expected to plead guilty to three counts of theft valued at $1,000 or more in exchange for a ten-year, fully suspended sentence and payment of $1,000 total in restitution. The record belies this contention. At the post-conviction hearing, trial counsel testified that he never told the Petitioner that he would only have to pay $1,000 in restitution. Although trial counsel admitted that there was some disagreement between the Petitioner and the Assistant District Attorney General as to the value of the vehicles, the Assistant District Attorney General made it clear that it was a "take it or leave it situation." Trial counsel did try to negotiate the restitution amount down, but the Assistant District Attorney General was not willing to negotiate, and trial counsel explained to the Petitioner that he could either accept the higher valuations or go to trial. The Petitioner acknowledged that, prior to entering his plea, the Assistant District Attorney General told him, "You'll pay what I tell you to pay." The Petitioner testified that the Assistant District Attorney General told him two of the cars were worth $1,000 each and that the third car was worth $2,500.

Without a plea agreement, the Petitioner was facing a mandatory twelve-year sentence to be served at sixty percent. See Tenn. Code Ann. §§ 40-35-108, -112, -501. The Petitioner admitted that he failed to appear twice for sentencing and that he "never showed up with a dime" to pay towards restitution. Trial counsel testified that when he spoke with the Petitioner after the first failure to appear, the State was still willing to honor the original plea deal on the theft charges, and the Petitioner indicated that he was planning on paying restitution. It is undisputed in the record that, at that time, the Petitioner knew the amount of restitution was $4,500. The record supports the post-conviction court's determination that the Petitioner has failed to prove by clear and convincing evidence that trial counsel did not communicate the amount of restitution. The Petitioner's argument is without merit.

Next, the Petitioner contends that trial counsel was ineffective for failing to file a motion to vacate his plea. The Petitioner alleges that when he spoke with trial counsel after the guilty plea submission hearing, he told trial counsel that he had never agreed to pay $4,500 in restitution and that he wanted to withdraw his plea. The Petitioner testified that he sent trial counsel several letters asking why he had not moved to have the plea vacated. However, when trial counsel was asked whether he agreed to file a motion to vacate the plea, he responded, "No. Absolutely not." Additionally, trial counsel denied ever receiving the letters, and the post-conviction court accredited counsel's testimony in this respect. The record supports the post-conviction court's conclusion that the Petitioner has failed to prove that trial counsel was ineffective for failing to file a motion to vacate the plea. This issue is without merit.

Finally, the Petitioner contends that trial counsel was ineffective for failing to effectively communicate with the Petitioner. The Petitioner asserts that he sent multiple letters to trial counsel alleging that counsel ignored the Petitioner's multiple attempts to get in touch with trial counsel. The August 6, 2010 letter alleged that the Petitioner had made fourteen futile attempts to speak with trial counsel via telephone, that trial counsel had missed an appointment, and that trial counsel had only met with the Petitioner on one occasion. Trial counsel, however, testified that he was involved with the Petitioner's case before the Petitioner was even indicted, that he and the Petitioner met several times in counsel's office, and that he and the Petitioner had a good working relationship up until the first failure to appear. Furthermore, trial counsel testified that he explained the charges against the Petitioner as well as the potential consequences of a guilty verdict, and he discussed defenses that could be used if the Petitioner decided to proceed to trial.

Trial counsel testified that it would be "extremely inaccurate" to say that he routinely failed to return phone calls. As mentioned above, the post-conviction court expressed concern over the letters that the Petitioner claimed to have sent to trial counsel, saying that it had never known trial counsel to misrepresent anything to the court. Additionally, during the guilty plea submission hearing, the Petitioner testified that he was fully satisfied with trial counsel's performance. The trial court ruled that the Petitioner did not prove that counsel failed to effectively communicate with the Petitioner, and the record supports that finding. The Petitioner's argument is without merit.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE